349 F.3d 1149
 Martin Allen JOHNSON, Plaintiff-Appellant,
v.
Edward F. REILLY, Jr., Chairman, U.S. Parole Commission; John Ashcroft, Attorney General of the United States; Jim Spinden, Sheriff, Washington
County, Oregon; Dan Noelle, Sheriff, Multnomah County, Oregon; Pat Detloff, Sheriff, Clackamas County, Oregon, Defendants-Appellees.
 No. 01-36033.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 7, 2003.
 Filed November 18, 2003.
 
 Christine Stebbins Dahl, Asst. Federal Public Defender, Portland, OR, for the Petitioner-Appellant.
 Kenneth C. Bauman, Asst. U.S. Attorney, Portland, OR, for the Respondents-Appellees.
 Appeal from the United States District Court for the District of Oregon; Michael R. Hogan, District Judge, Presiding. D.C. No. CV-01-00922-HO.
 Before LAY,* WALLACE, and TALLMAN, Circuit Judges.
 WALLACE, Senior Circuit Judge:
 
 
 1
 Johnson appeals from the decision of the district court denying his petitions for a writ of mandamus to the United States Parole Commission (Commission), for habeas corpus, and for declaratory relief. The district court assumed jurisdiction over this case pursuant to 28 U.S.C. § 2241. 28 U.S.C. § 1291 provides us with jurisdiction to the extent that the district court denied Johnson's requests for mandamus and declaratory relief. We dismiss in part and affirm in part.
 
 I.
 
 2
 Johnson began serving the first of his relevant prison terms in this case after an October 9, 1986 sentencing. He was to be incarcerated for twenty-two years, followed by a special six-year parole term for convictions under 21 U.S.C. § 841(a) (possession of cocaine and marijuana with the intent to distribute) and 18 U.S.C. Appendix § 1202(a) (felon in possession of a firearm). He was paroled in 1993 and, in 1996, following the recommendation of his parole officer, the Commission discharged Johnson from his regular parole and ordered that he begin serving his six-year special parole term on March 1, 1997.
 
 
 3
 Nearly a year later, Johnson became the prime suspect in an Oregon murder. Law enforcement officials executed a search warrant on Johnson's residence and contacted Johnson's family. A brother told Washington County Deputy Sheriffs that Johnson had stolen his car and other personal items, prompting the deputy sheriffs to file a police report.
 
 
 4
 State law enforcement officials also communicated with the United States Probation Office for the District of Oregon, which was responsible for supervising Johnson's special parole term. After learning about the charges, Crocker, Johnson's Probation Officer, requested an emergency special parole term violator's warrant from the Commission, stating three grounds: (1) Johnson had stolen his brother's car; (2) Johnson had moved without advising Crocker of his new address; and (3) Johnson had failed to report to work after the discovery of the body and during the ensuing investigation. Crocker also told the Commission in his request that
 
 
 5
 Johnson is also being investigated by Washington County Sheriff's Deputies and is listed as a prime suspect in relationship to the death of a 15-year-old girl who was found dead on the Oregon Coast on the morning of February 24, 1998.
 
 
 6
 The Commission issued the special parole term violator's warrant, the same day. The instructions in the memorandum accompanying the warrant warned the executing officer to
 
 
 7
 assume custody as soon as possible or when located. NOTE: If the parolee is already in the custody of federal or state authorities, do not execute this warrant. Place a detainer and notify the Commission for further instructions. Also, if a criminal arrest warrant has been issued for this parolee, execution of such criminal warrant shall take precedence and the Parole Commission is to be notified before its warrant may be executed.
 
 
 8
 Soon thereafter, three Oregon counties (Multnomah, Clakamas, and Washington) issued separate indictments and criminal arrest warrants against Johnson. Crocker notified the Commission of the three additional arrest warrants and the new charges, reporting that Johnson, still at large, now faced fourteen counts of criminal sexual misconduct. The Commission decided not to supplement its violator warrant with the new charges but wait and monitor their development.
 
 
 9
 A year after Johnson became a prime suspect in the Oregon murder, he was featured on the popular crime-fighting television show America's Most Wanted. Almost immediately thereafter, the United States Marshal's Service (USMS) was advised that Johnson was hiding in Kissimmee, Florida. USMS Deputies located Johnson there and arrested him, relying on the Commission's parole term violator warrant since it was entered first in the National Crime Information Center warrant database. Crocker notified the Commission that its warrant had been executed.
 
 
 10
 Nevertheless, the USMS called the Commission directly a few days later and informed it that its warrant had not in fact been executed, apparently believing that if they neglected to fill out the back of the warrant, it was not "executed." USMS also reported that another warrant for Johnson's arrest had been issued by Washington County, Oregon, on murder charges. The Commission declined the USMS's offer to execute its warrant at that time and advised the USMS to execute the Washington County arrest warrant. Johnson waived extradition and was returned to Oregon. On March 11, 1999, the Commission lodged the original 1998 warrant as a detainer in Washington County, Oregon. Johnson was indicted for murder there the next day.
 
 
 11
 On June 27, 2001, the Commission supplemented its special parole term violator's warrant with two rape charges based on the criminal sexual misconduct counts Johnson faced in other Oregon indictments. On July 11, 2001, the Commission supplemented the violator warrant again, adding the charge of aggravated murder. On August 14, 2001, Johnson was found guilty of murder and was sentenced to death.
 
 
 12
 Johnson now complains to us that the lack of a parole revocation hearing within sixty days of the execution of the Commission's warrant requires reversal of the district court.
 
 II.
 
 13
 We first determine if we have appellate jurisdiction over this action. Johnson's complaint asked the district court for three forms of relief: a writ of habeas corpus pursuant to 28 U.S.C. § 2241, a writ of mandamus to the Commission pursuant to 28 U.S.C. § 1361, and declaratory relief pursuant to 28 U.S.C. § 2201. The complaint named as respondents the Chairman of the Commission, the United States Attorney General, and the Sheriffs of the three Oregon counties where Johnson faced charges. The district court decided that Johnson's action should be treated solely as a section 2241 petition for habeas corpus and entered a scheduling order directing that the United States Attorney be served with Johnson's pleadings. No state official was served.
 
 
 14
 We review de novo whether the district court properly had subject matter jurisdiction over this section 2241 action. See Dearinger ex rel. Volkova v. Reno, 232 F.3d 1042, 1044 (9th Cir.2000). Where a prisoner files an action under section 2241, "the prisoner must name the warden of the penitentiary where he is confined as a respondent." Allen v. State of Oregon, 153 F.3d 1046, 1050 (9th Cir.1998), quoting Dunne v. Henman, 875 F.2d 244, 249 (9th Cir.1989). "Failure to name the petitioner's custodian as a respondent deprives federal courts of personal jurisdiction," Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir.1994), as does failure to serve the petitioner's custodian. Allen, 153 F.3d at 1050; Morehead v. California, 339 F.2d 170, 171 (9th Cir.1964). Although Johnson named his custodian, Sheriff James Spinden of Washington County, as a respondent, Spinden was never served. Johnson's habeas petition must therefore be dismissed.
 
 
 15
 The district court, however, limited Johnson's case to habeas relief without dismissing his complaint with respect to his requests for mandamus and declaratory relief. An action like Johnson's, which asks whether the Commission denied Johnson "his legally mandated speedy parole revocation hearing following his arrest on a parole violator warrant," sounds "more properly in mandamus" than in habeas. Thompson v. Crabtree, 82 F.3d 312, 313 n. 1 (9th Cir.1996). Thus, in effect, the district court denied mandamus relief. Johnson's mandamus action was directed at the Commission and does not suffer from jurisdictional defects, as the Commission was served and has appeared in this case through the United States Attorney. We will treat what remains of this action as a mandamus petition, and will determine whether mandamus was properly denied.
 
 III.
 
 16
 Mandamus is an extraordinary remedy granted in the court's sound discretion. Miller v. French, 530 U.S. 327, 339, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000). For mandamus relief, three elements must be satisfied: "(1) the plaintiff's claim is clear and certain; (2) the [defendant official's] duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." R.T. Vanderbilt Co. v. Babbitt, 113 F.3d 1061, 1065 n. 5 (9th Cir.1997) (internal quotations and citations omitted). Whether the elements are satisfied is a question of law reviewed de novo. Id. at 1065. Even if the test is met, the district court still retains the discretion to deny relief. Id. n. 5.
 
 
 17
 There is no question that once the Commission executes a parole violator warrant by retaking the parolee into custody under the warrant, the Commission must abide by the requirements of 18 U.S.C. § 4214 and "cannot avoid[them] by withdrawing the warrant and lodging it as a detainer." Thompson, 82 F.3d at 316. One such requirement is to give a retaken parole violator a hearing to determine whether there is probable cause to believe he has violated a condition of his parole, followed by a revocation hearing within sixty days. 18 U.S.C. § 4214(a).[1]
 
 
 18
 In this case, Johnson's parole violator arrest warrant normally would have been executed when he was taken into custody in Kissimmee on its authority. However, if the warrant was executed contrary to the Commission's instructions, the execution would be invalid. United States v. Cox, 475 F.2d 837, 839-40 (9th Cir.1973). The government argues as much here, because the USMS arrested Johnson pursuant to the Commission's warrant when three other warrants for Johnson's arrest were outstanding and the instructions in the Commission's warrant clearly stated that "if a criminal arrest warrant has been issued for this parolee, execution of such criminal warrant shall take precedence and the Parole Commission is to be notified before its warrant may be executed."
 
 
 19
 The district court observed that evaluating the validity of the original warrant's execution "would require an evidentiary hearing," and thus gave the Commission the option of dismissing the charges on the original warrant application or holding the hearing. The Commission chose to dismiss the original warrant's charges. Johnson argues that the district court wrongfully allowed the Commission to do so.
 
 
 20
 In Thompson, we approved extending this very choice to the Commission. Thompson was paroled from a fifteen-year bank robbery sentence in August 1988. The next month, the Commission issued a parole violator warrant, alleging five technical infractions of his parole conditions. 82 F.3d at 313. Thompson voluntarily surrendered to the USMS two months later on this warrant and requested a revocation hearing. However, at the time of his surrender, he admitted to committing several bank robberies while on parole, leading to the issuance and execution of a new warrant for his arrest. After Thompson pled guilty to the bank robberies, the Commission supplemented the original parole violator warrant with new charges for these robberies committed on parole. Id. at 314. In June 1990, the Commission lodged the violator warrant, containing the supplemental warrant applications, as a detainer in the federal prison where Thompson was incarcerated. The Commission notified Thompson that the detainer would stand, all without ever holding the parole revocation hearing. Id.
 
 
 21
 In response to the Commission's contention that the new charges authorized the detainer and suspension of review of the parole violations, we held that Thompson's violator warrant had been executed, thereby triggering the requirements of section 4214. Id. at 316. Nonetheless, we concluded that the only relief Thompson was entitled to was to have the Commission decide whether to "dismiss [the original charges] from the detainer with prejudice or to have a prompt revocation hearing on those charges." Id.
 
 
 22
 Here, the district court gave the Commission the same choice: it could either dismiss from the detainer the original charges (stealing his brother's car, changing addresses without notifying his parole officer, and failure to report to work) on which Johnson was ostensibly arrested, or agree to an evidentiary hearing to determine if the original warrant "was validly executed requiring a return of custody to the Commission to hold a [revocation] hearing." The Commission chose the former, leaving the supplemental charges in the violator warrant, charging Johnson with rape and aggravated murder, free to stand. The addition of these supplemental charges constituted the issuance of a "`new' warrant," which has not been executed. See Thompson, 82 F.3d at 317. Therefore, the "new warrant" with the supplemental charges was properly lodged as a detainer. Id.; see also Hopper v. United States Parole Comm'n, 702 F.2d 842, 848 (9th Cir.1983). Since this outcome accords with Thompson, there was no error, let alone an abuse of discretion.
 
 IV.
 
 23
 Johnson argues that because Washington County dismissed the murder indictment against him in June 2001 and replaced it with a new indictment, Washington County yielded primary jurisdiction to the Commission's warrant. He argues that the Commission was therefore required to arrest him on the detainer it had outstanding.
 
 
 24
 Johnson is mistaken. The Commission is not "required" to take a parolee into custody at any given time. Smith v. United States Parole Comm'n, 875 F.2d 1361, 1364 (9th Cir.1988) ("[T]he `Parole Board has the sole authority to decide when a parole violation warrant will be executed,' and ... the federal government has no duty to take anyone into custody."), quoting Lepera v. United States, 587 F.2d 433, 435 n. 1 (9th Cir. 1978). Even if Washington County somehow "ceded" priority of jurisdiction over Johnson to the Commission, which we do not hold, the Commission was not required to execute its warrant lodged as a detainer.
 
 
 25
 While, as Johnson points out, under Oregon law the "dismissal of an indictment extinguishes the criminal proceedings," it is still within the Commission's discretion whether to execute its warrant. In this case, the Commission chose not to act on its detainer because it is Commission practice not to interfere with ongoing state criminal proceedings. Federal officials were well aware of the numerous state charges Johnson faced, and it was up to the Commission's executive discretion whether to execute the warrant during any "gap" in time between the two murder indictments.
 
 V.
 
 26
 Johnson finally argues that the district court denied him due process when it ruled on the merits of his claims before he had a chance to respond to the government's answer to his amended petition. The district court's decisions regarding the management of the litigation are reviewed for an abuse of discretion. Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1069 (9th Cir.2000).
 
 
 27
 The district court's proceedings did progress at a quick pace, largely in line with Johnson's express wishes. On July 6, 2001, Johnson requested "that the Court expedite its initial review of the amended petition," and on July 13 he filed a motion to shorten the briefing schedule. The government timely filed its answer to the petition on July 31. The next day, the district judge notified the parties that he would hold a hearing on August 7. In a letter dated August 2, Johnson sought "emergency consideration" of his July 13 motion to abbreviate the briefing schedule, as the jury in his state murder trial was scheduled to be sworn on August 6. The federal hearing was conducted on August 7, and the district judge issued an August 10 order giving the Commission seven days to decide whether to dismiss the charges in the original warrant or to submit to an evidentiary hearing to determine if the original warrant "was validly executed requiring a return of custody to the Commission to hold a [revocation] hearing." On August 16, the Commission opted to dismiss the charges in the original warrant.
 
 
 28
 Johnson now argues that "[w]hen the court did not act to advance the briefing schedule before [his state] trial started on August 6, 2001, the need for expedited resolution evaporated." He therefore contends that the district court should have stopped the expedited process. There is no evidence in the record, however, that Johnson ever informed the district judge that he no longer wanted "expedited resolution."
 
 
 29
 Moreover, under Rule 7(a) of the Federal Rules of Civil Procedure, Johnson was not entitled to file a reply to the government's answer. Rule 7(a) states: "There shall be a complaint and an answer.... No other pleading shall be allowed, except that the court may order a reply to an answer...." In this case, the district judge's scheduling order permitted Johnson to file a brief in support of his petition "[n]ot later than sixty (60) days following the filing of respondent's answer." On August 2, when Johnson again requested "emergency consideration" of his motion to shorten the briefing schedule, he had already received the government's answer and knew the hearing was scheduled for August 7. Indeed, he had six days from the August 1 notice of the hearing to file a brief in support of his petition. Given that it was Johnson who wanted to shorten the briefing schedule and that it was entirely within his power to file a response to the government's answer before the expedited hearing he had requested, the district court was well within its discretion in conducting the hearing without the benefit of any support brief Johnson may have wished to file. Consequently, there was no abuse of discretion in ruling on the merits of Johnson's claims before he filed a reply.
 
 
 30
 DISMISSED in part, AFFIRMED in part.
 
 
 
 Notes:
 
 
 *
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Section 4214 and the other provisions of the Parole Commission and Reorganization Act of 1976 were repealed by the Comprehensive Crime Control Act of 1984, Pub.L. No. 98-473, Title II, § 218(a)(5), 98 Stat. 1837, 2027. This chapter containing section 4214 remains in effect, however, until 2005 as to convictions obtained prior to November 1, 1987, § 235(b), 98 Stat. at 2031; see also 21st Century Department of Justice Appropriations Act, Pub.L. No. 107-273, § 11017, 116 Stat. 1758, 1824 (2002), which would include Johnson's