In re CAPITOL HILL GROUP, Debtor,

Capitol Hill Group, Appellant,

v.

Shaw Pittman LLP, Appellee.

Bankruptcy No. 02–0359.
Civ.Nos. 04–750(RCL), 04–751.

United States District Court,
District of Columbia.

Aug. 17, 2004.

Donald R. Hartman, MedLink, Washington, DC, for Appellant.

Patrick J. Potter, Shaw Pittman, Washington, DC, for Appellee.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on appeal from the bankruptcy court of the District of Columbia. Appellant Capitol Hill Group ("CHG") appeals three rulings of the bankruptcy court in favor of Shaw Pittman, CHG's bankruptcy counsel in its Chapter 11 reorganization proceedings.

CHG appeals under Bankruptcy Rule 8001(a) and this Court has jurisdiction under 28 U.S.C. § 158(a). Also before the Court is Shaw Pittman's motion for a hearing, Shaw Pittman's motion for summary affirmance, and Shaw Pittman's motion to file excess pages. Upon consideration of the appellate briefs of the parties, the joint appendix filed in support, the law, and the facts of this case, the Court shall AFFIRM the decisions of the bankruptcy court. The Court shall deny Shaw Pittman's motion for a hearing,[1] shall deny as moot Shaw Pittman's motion for summary affirmance, and shall grant the motion to file excess pages.

CHG appeals three decisions of the bankruptcy court. It appeals a summary judgment decision of March 2, 2004,[2] a summary judgment decision of April 9, 2004, and an order awarding attorney's fees on April 20, 2004. In its appeal of these rulings, CHG brings four issues for consideration by this Court.

The four issues presented for appeal are 1) whether it was error to determine that Shaw Pittman did not breach its fiduciary duty to CHG; 2) whether it was error to determine that a reasonable jury could not conclude that an email offer from Shaw Pittman did not contain a no-contest provision and/or that a subsequent email offer did not reinstate a previous email offer from Shaw Pittman; 3) whether it was error to determine that the actions of CHG constituted acceptance by silence of the Shaw Pittman offer; 4) whether it was error to determine that a reasonable jury could not conclude that Shaw Pittman failed to object at CHG's confirmation hearing for reasons other than having ne-

gotiated a no-contest provision from CHG. Brief of CHG at 1–2.

## BACKGROUND

The uncontested facts of the case are straightforward. CHG filed for bankruptcy in February 2002. Shaw Pittman served as bankruptcy counsel to CHG upon commencement of its Chapter 11 case. From the period of February 2002 to November 2003, Shaw Pittman billed CHG approximately $1.1 million in fees but did not receive any payments. In December 2003, CHG needed to secure an extension of the December 15, 2003 deadline set by the bankruptcy court in order to obtain financing needed to allow CHG to comply with its plan and emerge from Chapter 11. The record indicates that parties and the bankruptcy court believed that the December 15, 2003 hearing served as a confirmation hearing in that CHG had to meet all the requirements for confirmation in order to obtain the extension.

CHG's problem as it approached the confirmation hearing was that CHG's anticipated financing was insufficient to pay all of its creditors. One of the creditors entitled by statute to receive full compensation on confirmation of the plan was Shaw Pittman, CHG's bankruptcy counsel. CHG approached Shaw Pittman in early December 2003 and asked the firm to accept less than the full amount owed on the confirmation date with the balance to be paid at a later date. Shaw Pittman declined CHG's initial offer and the parties commenced negotiations.

---

**1.** The Court has decided, in compliance with Bankruptcy Rule 8012, that oral argument is not needed and that the Court is able to resolve the appeal upon consideration of the briefs of the parties and the record from the court below.

**2.** CHG appeals the bankruptcy court's March 2, 2004 order denying summary judgment but nevertheless making conclusions in favor of Shaw Pittman.

A series of negotiations ensued culminating in an email exchange on the morning of December 15, 2003. According to CHG's appellate brief and the uncontested record of the bankruptcy court, on the morning of December 15, Mr. Donald Hartman, an attorney and employee of CHG, sent an email to Mr. Potter, an attorney for Shaw Pittman and primary attorney for CHG's bankruptcy case, with a copy to the owner of CHG, Mr. Shin, stating:

Dr. Shin is prepared to offer to pay Shaw Pittman $850,000 today from the Fremont proceeds and give SP [Shaw Pittman] a lien against the Accounts Receivable pending The HBCC closing which we anticipate will occur very soon.

Joint Appendix at 392 ("CHG Email 1"); Brief of Appellant CHG at 9.

Mr. Potter responded with an email sent to Mr. Hartman stating:

Donald: My Management Team accepts the fee proposal on two caveats. One the UCC liens will be signed today. And, of course, I will not be fighting with CHG about my fee applications (trust me, not that I am concerned; and I am sure you probably know, any fights about fee applications would be an expense to be paid by CHG). Please confirm immediately.

Joint Appendix at 392 ("SP Email 2").

Mr. Hartman responded to Shaw Pittman's offer via email, this time with no copy being sent to Mr. Shin, stating "Patrick—It's a deal—this presupposes the (I believe) 5% discount you offered Dr. Shin previously. I hope your firm can prepare the liens." Joint Appendix at 394 ("CHG Email 3"). Mr. Potter responded to this email stating: "No it does not presuppose a 5% deal. I did not offer it. That is a mischaracterization. Please confirm all fees will be paid. I will consider a discount after my questions put to Dr. Shin

on the issue have been answered." Joint Appendix at 400 ("SP Email 4"). The parties sent no further emails.

Shortly thereafter, Mr. Potter and Mr. Hartman attended the confirmation hearing before the bankruptcy judge. The two spoke briefly prior to the hearing. The record reflects that at the hearing, Mr. Potter, representing CHG as its bankruptcy counsel, did not inform the Court on behalf of CHG that CHG would be unable to pay Shaw Pittman their attorney's fees or that CHG could not meet that or any other requirement for confirmation found in 11 U.S.C. § 1129. Joint Appendix at 56. The bankruptcy court confirmed the plan, the post petition financing went through hours later and CHG wired $850,000 to Shaw Pittman the morning of December 16, 2003. Brief of Appellee Shaw Pittman at 17. On January 12, 2004 Shaw Pittman filed its Second Interim and Final Fee Application of Shaw Pittman LLP For Compensation and Reimbursement of Expenses as Counsel for the Debtor in which Shaw Pittman requested court approval for all fees still unapproved. On January 30, 2004, CHG filed a written objection to all fees billed by Shaw Pittman in the case. A series of rulings then followed from which CHG now appeals.

## STANDARD OF REVIEW

As a general rule, in an appeal from a decision of the bankruptcy court, the burden of proof is on the party that seeks to reverse the Bankruptcy Court's holding. *In re Johnson,* 236 B.R. 510, 518 (D.D.C.1999) (citing *Anderson v. Bessemer City,* 470 U.S. 564, 573–574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). The standard of review appropriate to the issues raised on appeal depends on the context of the decisions rendered and the nature of the decision. The Court reviews summary judgment decisions de novo. *U.S. v. Spicer,* 57

F.3d 1152, 1159 (D.C.Cir.1995) (citing *In re Varrasso*, 37 F.3d 760, 763 (1st Cir.1994) (finding a district court reviews bankruptcy court's grant of summary judgment de novo)). Bankruptcy Rule 7056, which incorporates the standard of Rule 56 of the Federal Rules of Civil Procedure, governs summary judgment in bankruptcy, i.e., summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Varrasso*, 37 F.3d at 762–63. Material facts are those "that might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and a genuine dispute about material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.* Furthermore, on a motion for summary judgment, "all inferences to be drawn ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Even the bankruptcy court's purported factual findings are reviewed de novo, since they constitute conclusions as a matter of law that no genuine factual dispute exists to preclude summary judgment. *Rosen v. Bezner*, 996 F.2d 1527 (3rd Cir.1993).[3]

■ In contrast, CHG's appeal of the April 20, 2004 decision of the bankruptcy court awarding fees and expenses to Shaw Pittman is reviewed under the abuse of discretion standard. *In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir.1994). To the extent the bankruptcy court made any factual findings to support its award these are reviewed under the clearly erroneous standard. *Id.;* Bankruptcy Rule 8013 (2004).

■ Lastly, the bankruptcy court's equitable determinations are also reviewed for abuse of discretion. *In re Behlke*, 358 F.3d 429, 433 (6th Cir.2004); *In re I. Appel Corp.*, 300 B.R. 564 (S.D.N.Y.2003). The question of whether a bankruptcy court abused its discretion can only be answered in the affirmative if the bankruptcy court "based its ruling on an erroneous view of the law or a clearly erroneous assessment of the facts." *In re Johnson*, 236 B.R. 510, 518 (D.D.C.1999) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). The burden of proof is on the party that seeks to reverse the Bankruptcy Court's holding. That party must show that the court's holding was clearly erroneous as to the assessment of the facts or erroneous in its interpretation of the law and not simply that another conclusion could have been reached. *Id.*

### FIRST ISSUE ON APPEAL

CHG's first argues that the "Bankruptcy Court improperly declined to consider CHG's arguments regarding equitable considerations, namely Shaw Pittman's breach of the fiduciary duty owed to its client, CHG." Brief of CHG at 11. CHG urges the Court to "reverse the Bankruptcy Court by finding that, under equitable principles, Shaw Pittman should not be permitted to reap the fruits of their ill-

---

**3.** Both parties incorrectly cited the standard of review for issues arising from a summary judgment ruling as clearly erroneous for any factual findings. But that is not the correct standard for review of summary judgment rulings. *See Varrasso*, 37 F.3d at 763 (finding that "the district court applied the wrong standard of review" because "[t]he court refrained from drawing reasonable inferences in the debtors' favor. To the contrary, it ruled that the bankruptcy court's "findings" had to be upheld because they were not "clearly erroneous." ").

gained bounty by virtue of their breach of numerous Rules and thus a breach of their fiduciary duty to CHG." *Id.* at 21.

■■■ It is a black letter principle of appellate review that "issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1084 (D.C.Cir. 1984). There is a consistent practice of "dismissing appeals brought on grounds not asserted in the trial court." *Id.* Therefore, to the extent that CHG did not raise this breach of fiduciary duty claim in the bankruptcy court, it is waived and will not be heard for the first time on appeal.

CHG now attempts on appeal to make out a prima facie claim in tort for breach of fiduciary duty. Brief of CHG at 15–16 (setting forth elements of the claim). But CHG did not make this claim in front of the bankruptcy court. The sole reference in CHG's briefs to the bankruptcy court about these issues comes in a section entitled "Equitable Considerations." There CHG asserts that Shaw Pittman's conduct in negotiating the fee dispute was inappropriate and should serve as an equitable defense to enforcement of the contract prohibiting objection to Shaw Pittman's fees. Thus CHG at most is entitled to review of the bankruptcy court's decision, made pursuant to its powers in equity, to refuse to set aside the contract between CHG and Shaw Pittman over the latter's attorney's fees.

Any review of the bankruptcy court's equitable determinations takes place under an abuse of discretion standard. *In re Behlke,* 358 F.3d 429, 433 (6th Cir.2004). CHG bears the burden of proving abuse of discretion by showing that the bankruptcy court "based its ruling on an erroneous view of the law or a clearly erroneous assessment of the facts." *In re Johnson,* 236 B.R. at 518. It is insufficient to show

that another conclusion could have been reached. *Id.* CHG has failed to meet this burden. Neither side takes objection to the few facts offered by CHG in support of its argument. The Court therefore considers whether CHG proves the bankruptcy court based its ruling on an erroneous view of the law.

■■■ The crux of CHG's breach of fiduciary duty/breach of professional conduct argument is that Shaw Pittman, as counsel to CHG, is not permitted to negotiate the resolution of its fee dispute in the manner in which it did. The bankruptcy court found that no impropriety existed and that in this case "[t]here's nothing unfair about settling fee disputes between client and attorney." Joint Appendix at 952. The key incidents held out by CHG as proof of this improper conduct are statements by Mr. Potter of Shaw Pittman. CHG cites Mr. Potter's statement to the bankruptcy court that had CHG and Shaw Pittman been unable to negotiate a fee arrangement that he would "have come back before Your Honor on some sort of expedited basis to prevent the closing from going forward for failure to comply with the terms of the plan and Section 1129 of the Code." Joint Appendix at 206. The Court finds that this statement does not undercut the bankruptcy court's ruling denying CHG's request for equitable relief.

11 U.S.C. § 1129 creates two conflicting roles for debtor's counsel. First, section 1129 requires the debtor to prove by a preponderance of the evidence that its plan meets all elements required for confirmation. *In re Trevarrow Lanes, Inc.,* 183 B.R. 475 (Bankr.E.D.Mich.1995). In most cases, including this one, it will be the counsel for the debtor that stands before the bankruptcy court and argues that his client has met all the requirements for confirmation. Attorneys have a legal duty to argue truthfully before the Court. *See*

Fed.R.Civ.P. 11. Thus as debtor's counsel, Shaw Pittman has a duty to inform the Court truthfully as to whether or not CHG met all the requirements for confirmation.

The complication arises because under section 1129(a)(9)(A), Shaw Pittman is also a creditor entitled to full payment of its fees on the date of confirmation. There is an obvious tension between Shaw Pittman's status as a creditor desiring full payment and its status as debtor's counsel representing its client's desire to achieve confirmation. The exact delineations of the role of an attorney placed in the situation of Shaw Pittman are thankfully beyond the requirements of this case. What is clear is that as counsel for the debtor, Shaw Pittman has an obligation to represent truthfully to the Court whether CHG's plan can be confirmed. To the extent that the only bar to confirmation is the payment of their own fees, this obligation is undiminished. Shaw Pittman does not have an obligation to accept less than full payment merely because they are counsel to the debtor. In their alternative capacity as holder of an administrative expense, Shaw Pittman has the same statutory right of every other similarly situated administrative creditor to object to confirmation if it is not going to receive full payment. 11 U.S.C. § 1128(b) ("A party in interest may object to confirmation of a plan."). Thus Shaw Pittman can come before the bankruptcy court and object to confirmation of its own client's plan on grounds that the firm will not be paid as it is entitled to by statute and it can do so pursuant to its role as counsel for the debtor or as administrative creditor. CHG cites no law to overcome this conclu-

sion. The bankruptcy court found that the negotiations undertaken by CHG and Shaw Pittman were permissible. CHG has cited no law for the proposition that counsel to a Chapter 11 debtor cannot negotiate with its client over its fees in its capacity as administrative creditor in the manner undertaken by Shaw Pittman. The Court finds that the bankruptcy court did not abuse its discretion in rejecting CHG's equitable considerations and shall affirm that determination.

### SECOND ISSUE ON APPEAL

 CHG's second issue on appeal is whether it was error to determine that a reasonable jury could not conclude that an email offer from Shaw Pittman did not contain a no-contest provision and/or that a subsequent email offer did not reinstate a previous email offer from Shaw Pittman. Brief of CHG at 2.[4] The bankruptcy court's findings that the term was unambiguous and that the final email clarified and restated the prior offer from Shaw Pittman are reviewed de novo. *Spicer,* 57 F.3d at 1159.

 CHG first argues that the phrase "I will not be fighting with CHG about my fee applications" is ambiguous and subject to alternative explanations. Brief of CHG at 23. The law in the District of Columbia holds:

> a contract is ambiguous when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations ... and it is not ambiguous where the court can determine its meaning without any other guide than a

4. The bankruptcy court's determination of this issue arose in the March 2, 2004 hearing on Shaw Pittman's motion for summary judgment. The bankruptcy court made determinations at the hearing and subsequently issued an order. Although the bankruptcy court denied Shaw Pittman's motion for summary judgment, it made findings in the March 2, 2004 order that narrowed the issues to be resolved in a subsequent summary judgment motion.

knowledge of the simple facts on which, from the nature of language in general, its meaning depends ...

*Burbridge v. Howard Univ.*, 305 A.2d 245, 247 (D.C.1973). Whether ambiguity exists is a question of law to be decided by the court. *Dixon v. Wilson*, 192 A.2d 289, 291 (D.C.1963). Contract terms are not ambiguous merely because the parties disagree over the meaning. *Id.; Washington Prop. v. Chin*, 760 A.2d 546 (D.C.2000). Here the Court finds the meaning of the phrase "I will not be fighting with CHG about my fee applications" to be unambiguous. The plain meaning of the term is exactly as it appears; CHG cannot fight with Shaw Pittman over its fee applications.

▆▆▆ Even if the Court assumed some facial ambiguity and considered extrinsic evidence, the extrinsic evidence supports the plain language of the email. "When the meaning of a contract term is facially uncertain, a court may resort to an examination of extrinsic evidence, such as statements, course of conduct, and contemporaneous correspondence, aimed at discerning the intent of the parties." *Farmland Indust., Inc. v. Grain Bd. of Iraq*, 904 F.2d 732, 736 (D.C.Cir.1990) (citing *Sundown Inc. v. Canal Square Assoc.*, 390 A.2d 421, 432 (D.C.1978)).

The extrinsic evidence shows that at the time of the email exchange, CHG was aware that the bankruptcy court was scheduled to decide Shaw Pittman's First Fee Application (filed Nov. 14, 2003) requesting approximately $1.1 million immediately after the confirmation hearing. In fact the bankruptcy court did grant the first fee application by order dated December 16, 2003. *See* Joint Appendix at 38 (showing docket entry 449: "Order Granting Application for Compensation ... Granting Patrick J. Potter, fees awarded: $1,094,868.00 ..."). Second, the evidence

shows that Shaw Pittman had filed a Statement of Services Rendered ... Through November 30, 2003, Joint Appendix at 100, on December 5, 2003. And there is no fact question that Shaw Pittman would at some point in the future submit those fees to the bankruptcy court for approval via a fee application. Thus at the time of the negotiations, CHG was aware of all fees incurred and billed through November 30, 2003 and that because CHG's Chapter 11 plan was set for confirmation, Shaw Pittman would shortly be seeking bankruptcy court approval of its fees as part of the resolution of the case. Third, considering the term in light of subsequent emails shows it to be unambiguous. CHG's response to Shaw Pittman's SP Email 2 did not question the no objection term. Instead, in its response, Mr. Hartman of CHG states: "Patrick— It's a deal—this presupposes the (I believe) 5% discount you offered Dr. Shin previously. I hope your firm can prepare the liens." Joint Appendix at 394. Thus, even when the Court considers extrinsic evidence only one reasonable interpretation is possible. The pending fee application, CHG's agreement to the term in its next email, and its simultaneous failure to question the meaning or purpose of the no objection term before acceptance results in only one reasonable interpretation—that CHG would not contest Shaw Pittman's fee applications for fees billed up to that point.

CHG's assertions that Mr. Potter did not communicate the details of the no objection provision to others casts no ambiguity on the terms of the offer. CHG has offered no alternative explanation for the term and no reason why any communications by Mr. Potter to others should have included the no objection term. Thus the Court finds that there is no issue of fact as to whether or not the SP Email 2 offer

included a no objection provision and that the email offer did in fact include such a provision.

▆▆▆ CHG also argues that a reasonable jury could conclude that final email from Shaw Pittman did not reinstate the prior offer. However, CHG fails to cite a single legal authority for the proposition that only the final email should set the terms of the contract, other than a vague reference to "the generally accepted law of contracts." In contrast, according to the Restatement (Second) of Contracts "[t]he terms of a promise or agreement are those expressed in the language of the parties or implied in fact from other conduct. Both language and conduct are to be understood in light of the circumstances." Restatement (Second) of Contracts § 5 (1981). Understanding the final email in light of the circumstances shows that it restated the prior offer from Shaw Pittman.

The chain of emails is as follows: in CHG Email 1 [5], CHG sets forth the initial offer, Shaw Pittman responds with SP Email 2,[6] which accepts the terms in CHG Email 1 and adds several new terms. CHG responds in CHG Email 3 [7] and accepts all the terms in SP Email 2 without question but asks for clarification on whether SP Email 2 "presupposes" a 5% discount on the total amount of fees billed.

Shaw Pittman responds to this email with SP Email 4 [8] This email clarified SP Email 2 as not including any 5% discount on fees and requests that CHG confirm its prior statement in CHG Email 3 that "It's a deal." Properly viewed in their totality, and construed in the manner most favorable to CHG, the emails unambiguously show that final email from Shaw Pittman served to clarify the terms of SP Email 2 as not including any 5% discount and requesting confirmation from CHG that it in fact accepted Shaw Pittman's offer. CHG's failure to respond show that at the conclusion of the emails, Shaw Pittman had extended an offer to CHG but CHG had not accepted that offer.

The facts also support only one interpretation of the offer—that CHG understood the offer to include the terms of SP Email 2. At some point shortly after the December 15, 2003 hearing, CHG signed the liens on accounts receivable in favor of Shaw Pittman. Joint Appendix at 257. But there is no mention of liens in the final email. CHG's conduct in signing the liens contradicts its assertion that only the final email contained the terms of the offer. If CHG understood the final offer from Shaw Pittman as only including those terms in the final email then why did it subsequent-

---

**5.** The initial email from Mr. Hartman states as follows: "Dr. Shin is prepared to offer to pay Shaw Pittman $850,000 today from the Fremont proceeds and give SP [Shaw Pittman] a lien against the Accounts Receivable pending The HBCC closing which we anticipate will occur very soon." Joint Appendix at 392 ("CHG Email 1"); Brief of Appellant CHG at 9.

**6.** SP Email 2 states: "Donald: My Management Team accepts the fee proposal on two caveats. One the UCC liens will be signed today. And, of course, I will not be fighting with CHG about my fee applications (trust me, not that I am concerned; and I am sure you probably know, any fights about fee appli-

cations would be an expense to be paid by CHG). Please confirm immediately." Joint Appendix at 392.

**7.** CHG Email 3 states: "Patrick—It's a deal—this presupposes the (I believe) 5% discount you offered Dr. Shin previously. I hope your firm can prepare the liens." Joint Appendix at 394.

**8.** SP Email 4 states: "No it does not presuppose a 5% deal. I did not offer it. That is a mischaracterization. Please confirm all fees will be paid. I will consider a discount after my questions put to Dr. Shin on the issue have been answered." Joint Appendix at 400.

ly sign the liens in favor of Shaw Pittman? The only reasonable explanation is that CHG understood the offer to include all the terms from SP Email 2 as clarified by SP Email 4.[9] CHG's act of signing the liens fatally contradicts its subsequent version of the contract as only including terms from the final email. If the final email incorporated the term regarding the liens, then there is no basis in law or in fact for excluding the other terms of SP Email 2, including the term prohibiting objections to Shaw Pittman's fee applications. The final offer from Shaw Pittman included the terms set forth in SP Email 2.

Having examined the facts and found no genuine issues, the Court finds that Shaw Pittman is entitled to summary judgment as a matter of law on the issue of whether Shaw Pittman's final offer included a requirement that CHG not object to any then pending fees and whether the final email reinstated and clarified the offer in SP Email 2.

## THIRD ISSUE ON APPEAL

■ CHG's third issue on appeal is its contention that the bankruptcy court erred in concluding that 1) CHG accepted Shaw Pittman's offer by silence, and 2) CHG had a duty to speak if it planned to reject Shaw Pittman's offer. Brief of CHG at 26. This Court reviews de novo the bankruptcy court's findings that CHG accepted Shaw Pittman's offer by silence and that CHG had a duty to speak. *Spicer,* 57 F.3d at 1159.

CHG's legal duty to speak derives from the bankruptcy code. In order for a bankruptcy court to confirm a plan of reorganization, the plan must meet the statutory requirements in 11 U.S.C. § 1129. § 1129(a)(9) states in pertinent part:

> Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that (A) with respect to a claim of a kind specified in section 507(a) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

11 U.S.C. § 1129(a)(9).

Section 507 of the bankruptcy code provides first priority to "administrative expenses allowed under section 503(b) of this title." 11 U.S.C. § 507(a)(1). Section 503 states that "reasonable compensation for professional services rendered by an attorney" are an administrative expense. 11 U.S.C. § 503(b)(4). Applying these sections to the facts at hand, the following conclusions appear: 1) Shaw Pittman is a provider of legal services whose bills are considered administrative expenses under § 503(b); 2) Shaw Pittman's legal bills are first priority expenses under § 507(a)(1); and 3) under § 1129(a)(9)(A) "except to the extent that [Shaw Pittman] has agreed to different treatment" Shaw Pittman is entitled to full payment of their claim for fees on the effective date of the plan. There is no indication in the briefs that the parties dispute any of the aforementioned conclusions.

■ The rule in bankruptcy is that the proponent of the plan of reorganization, in this case CHG, bears the burden of proving by a preponderance of the evidence that the plan complies with all elements of 11 U.S.C. § 1129. *In re Trevarrow Lanes, Inc.,* 183 B.R. 475 (Bankr.E.D.Mich.1995);

---

**9.** CHG first mentioned liens on accounts receivable in CHG Email 1. Shaw Pittman mentioned the liens in SP Email 2 when it requested the liens be signed that day. CHG again confirmed its desire to sign the liens in CHG Email 3. The only email lacking a reference to the liens is the final email, SP Email 4.

*In re Rivers End Apartments, Ltd.*, 167 B.R. 470 (Bankr.S.D.Ohio 1994). As noted above, one such element is that an administrative creditor such as Shaw Pittman must be paid in full "[e]xcept to the extent that the holder of a particular claim has agreed to a different treatment of such claim." 11 U.S.C. § 1129(a)(9).

■ The default position of § 1129(a)(9) is that Shaw Pittman receives full payment. In order to pay Shaw Pittman something less, CHG has an affirmative burden to secure Shaw Pittman's consent. CHG cannot simply remain silent in the face of its obligation. *See In re Teligent, Inc.*, 282 B.R. 765, 767 (Bankr. S.D.N.Y.2002) (finding that "[t]he debtors could not ... satisfy § 1129(a)(9) ... except to the extent that a particular administrative creditor agreed to a different treatment."). The facts previously stated indicate that Shaw Pittman made an offer to CHG by email prior to the hearing. There is no evidence offered by CHG or Shaw Pittman to the effect that at any point prior to the hearing CHG advised Shaw Pittman, its bankruptcy counsel, that CHG was unable to comply with the provisions of § 1129 as a result of CHG's inability to resolve its fee dispute with Shaw Pittman. *See* Joint Appendix at 471.

■ Having received no contradictory information, Mr. Potter then went before the bankruptcy court in his capacity as counsel for CHG and stated that the bankruptcy court should confirm the plan of reorganization.[10] The only way that CHG could allow Mr. Potter to proceed with the confirmation hearing was if in fact CHG had accepted Shaw Pittman's pending of-

fer to accept less than full payment of their fees subject to the associated conditions. If CHG was not going accept Shaw Pittman's offer, it was bound by the bankruptcy code to inform the bankruptcy court, likely via Shaw Pittman as bankruptcy counsel, that it could not comply with § 1129. To reject Shaw Pittman's offer but assert compliance to the bankruptcy court would have been to obtain confirmation by fraud. Therefore, this Court concludes that as a matter law, CHG had an obligation to speak up and inform Shaw Pittman if it did not plan to accept Shaw Pittman's offer so that Shaw Pittman could truthfully represent to the bankruptcy court that CHG had not complied with all the elements of § 1129.[11]

■ CHG also argues that the bankruptcy court erred in determining that CHG's actions constituted an acceptance by silence of Shaw Pittman's offer. The District of Columbia has adopted the doctrine of acceptance by silence as set forth in the Restatement (Second) of Contracts. *Klingensmith, Inc. v. District of Columbia*, 370 A.2d 1341, 1343 (D.C.1977) ("The Restatement (Second) of Contracts, to which we subscribe for resolution of this issues, states the general principle that an offeror ordinarily lacks power to make an offeree's silence result in an acceptance.... [but] carves out three exceptions to this general rule.") (citations omitted).

The Restatement (Second) of Contracts states in relevant part:

> Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases

---

10. Mr. Potter had an obligation under the Federal Rules of Civil Procedure to make truthful representations to the bankruptcy court. *See* Fed.R.Civ.P. 11 (2004).

11. The Court's holding affirms the decision of the bankruptcy court that "Dr. Shin clearly recognized that Shaw Pittman's resolution of its fees was an element that had to be resolved before confirmation could be obtained." Joint Appendix at 474.

only: ...(b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer. (c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.

Restatement (Second) Contracts § 69(1)(c) (1981). The comments to the section clarify that one class of common cases is where the "offeree silently takes offered benefits." Restatement (Second) Contracts § 69, cmt. A. The comments further note that "explicit statement by the offeree ... may give the offeror reason to understand that silence will constitute acceptance". *Id.* at cmt. d.

The facts in this case parallel the language of the restatement. As determined above, at the time of the confirmation hearing on December 15, 2003, Shaw Pittman had extended an offer to CHG to resolve the issue of payment of Shaw Pittman's fees. CHG had a duty to speak and inform Shaw Pittman of whether it accepted or rejected Shaw Pittman's offer. CHG failed to reply by either affirmation or rejection to Shaw Pittman's offer. CHG then accepted the benefits of the offer, i.e. confirmation. Under District of Columbia law, the legal consequence of this series of actions is that CHG accepted Shaw Pittman's offer by silence.

CHG does not raise any genuine issues of material fact arguments that contradict these findings. Indeed, the facts asserted by CHG further support a finding of acceptance by silence. CHG quotes a portion of Mr. Potter's deposition describing the conversation between Mr. Hartman of CHG and Mr. Potter. At his deposition Mr. Potter stated: "And he [Mr. Hartman] indicated words to the effect that either if

we didn't hear back from him or from someone that [the offer] was unacceptable, that we should assume it's accepted, or ... [s]omeone will be getting back to you to let you know if it's unacceptable." Brief of CHG at 29. These statements parallel the comment to the restatement providing that the offeree may give the offeror reason to understand that silence will constitute acceptance. Construing Mr. Potter's deposition in the light most favorable to CHG creates no factual issue and supports a finding of summary judgment for Shaw Pittman. Given that CHG never informed Shaw Pittman that it rejected its offer, CHG's silence under its own terms and applicable District of Columbia law constitutes acceptance.

### FOURTH ISSUE ON APPEAL

CHG argues that a reasonable jury could conclude that Shaw Pittman failed to object at the confirmation hearing for reasons other than that Shaw Pittman believed CHG had accepted its offer. Brief of CHG at 33. This argument is frivolous. As a threshold matter, CHG fails to cite any location in the record where it brought this issue before the bankruptcy court and fails to connect its argument to any of the rulings or elements of the rulings of the bankruptcy court. CHG also fails to cite any factual support for its contention, instead resorting to references to "information and belief." Finally, CHG fails to cite any legal authority showing the legal relevance of its contention. Thus, even if Shaw Pittman had an alternative motivation for not objecting at the confirmation hearing, it is not relevant to any element of the law or any issue of fact under consideration. This argument for reversal is denied.

### *April 2, 2004 Imputed Knowledge Ruling*

In the April 2, 2004 hearing on Shaw Pittman's second motion for summary

judgment the bankruptcy court ruled for Shaw Pittman that the knowledge of Mr. Hartman be imputed to CHG. CHG appealed the April 9, 2004 Final Order and Judgment where the bankruptcy court granted Shaw Pittman's second motion for summary judgment. However, CHG has not appealed the issue of imputed knowledge in Shaw Pittman's second summary judgment motion.

■ Where a party appeals a judgment but fails to raise an issue on appeal the party abandons that issue and the Court will treat this issue as waived. *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir. 1983) ("The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued before them."); *Williams v. REP Corp.*, 302 F.3d 660, 665 (7th Cir.2002) (finding that a party has waived any argument that it "raised in the district court, [but] fails to develop on appeal."); *Humble v. Boeing Co.*, 305 F.3d 1004, 1012 (9th Cir.2002) ("Issues raised in a brief but not supported by argument are deemed abandoned absent manifest injustice.").

CHG's failed to present any discussion, argument, or citation of law or fact on the issue of imputed knowledge. Therefore the Court holds that CHG has waived its appeal of this issue and that the decision of the bankruptcy court on the issue is affirmed.

### April 20, 2004 Ruling on Shaw Pittman's Fee Application

CHG's only objection to the April 20, 2004 hearing is that the bankruptcy court prohibited CHG from objecting to Shaw Pittman's fee application. *See* Reply Brief Appellant CHG at 3. CHG properly asserts that the bankruptcy court predicated its prohibition on prior rulings on summary judgment that a contract existed between Shaw Pittman and CHG that prohibited such objections. Therefore, because the Court affirms the summary judgment findings of the bankruptcy court on March 2, 2004 and April 9, 2004, the Court likewise affirms the bankruptcy court's ruling on April 20, 2004 that the previously adjudicated contract between CHG and Shaw Pittman precluded CHG from objecting to Shaw Pittman's fee application. As CHG lodges no other objection to the April 20, 2004 hearing, and because the Court's review of that hearing is for abuse of discretion, this Court affirms the decision of the bankruptcy court to award fees to Shaw Pittman.

### REMAND

■ In construing the contract between CHG and Shaw Pittman de novo, this Court determined that the contract included the terms from SP Email 2. One of these terms required CHG to pay Shaw Pittman's expenses in the event that CHG attempted to object to any of Shaw Pittman's fee applications. CHG objected to Shaw Pittman's fees in violation of the contract. Therefore Shaw Pittman is entitled to its expenses for work performed in response to CHG's objections. This includes expenses incurred for proceedings in front of the bankruptcy court as well for proceedings in this Court. The Court shall remand the case to the bankruptcy court for a determination of the amount of those expenses and an award of those expenses to Shaw Pittman. This award is addition to any fees already awarded by the bankruptcy court in its April 20, 2004 hearing.

### CONCLUSION

Upon consideration of Appellant Capitol Hill Group's appeal of the decisions of the bankruptcy court, the Court hereby af-

firms in their entirety the March 2, 2004, April 9, 2004, and April 20, 2004 rulings, orders, and judgments of the bankruptcy court. The appeal of CHG shall be denied and dismissed. The Court shall remand the case to the bankruptcy court for execution of its prior award of attorney's fees and for an award of expenses to Shaw Pittman pursuant to the contract between the parties.

A separate order shall issue this date.

## ORDER

Appellant Capitol Hill Group comes before this Court appealing decisions of the bankruptcy court. Upon consideration of the appellate briefs of the parties, the record below, the law, and the memorandum opinion issued this date, it is

ORDERED that the bankruptcy court's March 2, 2004, April 9, 2004, and April 20, 2004 rulings, orders, and judgments are hereby AFFIRMED; it is

FURTHER ORDERED that Shaw Pittman's motion for a hearing is DENIED, Shaw Pittman's motion for summary affirmance is DENIED AS MOOT, and Shaw Pittman's motion to file excess pages is GRANTED; and it is

FURTHER ORDERED that the case is remanded to the bankruptcy court for further proceedings consistent with the Court's Memorandum Opinion including execution of the bankruptcy court's April 20, 2004 award of attorney's fees and for a separate award of expenses to Shaw Pittman pursuant to the contract between the parties.

SO ORDERED.